IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEATRICE CICALA, | |
|                *Plaintiff*, | CIVIL ACTION |
|     v. | NO. 15-6790 |
| TRANS UNION, LLC, *et al.*, | |
|                *Defendants*. | |
| JOSEPH CICALA, | |
|                *Plaintiff*, | CIVIL ACTION |
|     v. | NO. 15-6801 |
| TRANS UNION, LLC, *et al.*, | |
|                *Defendants*. | |

**PAPPERT, J.**                                                                                                                         May 9, 2016

**MEMORANDUM**

      Plaintiffs Beatrice and Joseph Cicala[1] ("the Cicalas") sued Defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax") and EverHome Mortgage Company ("EverHome"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., and defamation of character. Their claims stem from the Defendants' purported failure to correct inaccuracies on the Cicalas' credit reports. EverHome moved to dismiss the Cicalas' complaints pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court grants in part and denies in part EverHome's motion.

---

[1]     The Cicalas originally filed two separate actions, with Beatrice filing her complaint on December 23, 2015 and Joseph filing his the next day. *See Beatrice Cicala v. Trans Union, LLC, et al.*, No. 15-6790 (E.D. Pa. filed December 23, 2015); *Joseph Cicala v. Trans Union, LLC, et al.*, No. 15-6801 (E.D. Pa. filed December 24, 2015). Since the complaints are identical, the Court consolidated the two cases on March 1, 2016. *See Beatrice Cicala v. Trans Union, LLC, et al.*, No. 15-6790 (ECF No. 27); *Joseph Cicala v. Trans Union, LLC, et al.*, No. 15-6801 (ECF No. 25). The Court's analysis, therefore, applies to both complaints.

1

**I.**

The Cicalas obtained a mortgage loan on their primary residence from EverHome. (Compl. ¶ 9, ECF No. 1.)[2]  Every month from March to June of 2012, the Cicalas "called . . . EverHome to make the [monthly] payment less than thirty (30) days past the due date." (*Id*. ¶¶ 11–14.)  Sometime after June of 2012, the Cicalas decided to modify their mortgage. (*Id*. ¶ 15.)  They contacted Renae Hale ("Hale"), an EverHome employee, who instructed them "to withhold mortgage payments in order for . . . EverHome to establish a 'hardship' required to be able to modify [their] mortgage." (*Id*.)  Hale also told the Cicalas that withholding the payments would not have an adverse effect on their credit history. (*Id*. ¶ 16.)

In September of 2012 EverHome granted the Cicalas a "trial period loan modification," pursuant to which their first payment was due on October 1, 2012. (*Id*. ¶ 17.)  They made that payment on September 28, 2012. (*Id*.)  Since that first payment, the Cicalas have "continued to make each payment less than thirty (30) days before the due date up to and including the date of the filing of this Complaint." (*Id*. ¶ 20.)

In July of 2014 the Cicalas were "denied additional credit." (*Id*. ¶ 21.)  Thereafter they noticed that "[their] credit reports inaccurately showed that [they] . . . paid . . . EverHome thirty (30) days late" every month from March to July of 2012. (*Id*.)  They also noticed that their reports inaccurately showed they paid sixty days late in August of 2012 and ninety days late from September to December of 2012. (*Id*. ¶ 22.)

On June 16, 2015 the Cicalas disputed the accuracy of their credit reports with EverHome. (*Id*. ¶ 23.)  They lodged the same dispute with Trans Union, Experian and Equifax (collectively the "Credit Reporting Agencies" or "CRAs") on November 6, 2015. (*Id*. ¶ 24.)  The CRAs responded by notifying the Cicalas that "these accounts had been 'verified.'" (*Id*.

---

[2] Since the complaints are identical, the Court's factual recitation need only reference one.

¶ 25.) Following the disputes, the Cicalas noticed that the October to November of 2012 entries were changed from ninety days late to one-hundred and twenty days late. (*Id.* ¶ 26.) The Cicalas allege that the CRAs and EverHome failed to mark these entries as "disputed," which has resulted in, among other things: (1) a drop in their credit scores; (2) their being denied "various bank loans from several lenders"; (3) "serious financial harm"; and (4) "great physical, emotional and mental pain and anguish." (*Id.* ¶¶ 28–34.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. (quotation and citation omitted). Speculative and conclusory statements are not enough. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Furthermore, the court must construe the complaint in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)). However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

Finally, a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

### III.

The Cicalas' complaints assert that EverHome violated the FCRA by engaging in the following conduct: "(a) Willfully and negligently failing to properly and timely delete the inaccurate information from [the Cicalas'] credit files despite being provided with proof of its inaccuracy; and (b) Willfully and negligently continuing to furnish and disseminate inaccurate information and derogatory credit account and other information despite having knowledge of its inaccuracy; and (c) Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s–2(b); and (d) Reporting information with actual knowledge of errors in violation of 15 U.S.C. § 1681s–2(a)(1)(A); and (e) Reporting information after notice and confirmation of errors in violation of 15 U.S.C. § 1681s–2(a)(1)(B); and (f) Failing to correct and update information in violation of 15 U.S.C. § 1681s–2(a)(2)(B); and (g) Failing to provide notice of dispute in violation of 15 U.S.C. § 1681s–2(a)(3); and (h) Failing to conduct an investigation with respect to disputed information in violation of [15 U.S.C.] § 1681s–2(a)(8)."  (Compl. ¶¶ 43(a)–(h).)

EverHome contends that as a "furnisher" of information under the FCRA, it can only be held liable under 15 U.S.C. Section 1681s–2(b).  EverHome thus seeks dismissal of subparagraphs 43(a)–(b) and 43(d)–(h), which allege violations of 15 U.S.C. Section 1681s–

2(a).³  There is no private right of action for alleged violations of Section 1681s–2(a). *See, e.g.*, *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) (finding "no private right of action exists under [Section 1681s–2(a)]"); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 541 (E.D. Pa. 2015) (same).  Rather, that section can only be enforced "through the measures detailed in § 1681s(c)(1), specifically by 'the chief law enforcement officer of a State, or an official or agency designated by a State,' who 'may bring an action on behalf of residents of the State.'" *Vullings*, 115 F. Supp. 3d at 541 (quoting 15 U.S.C. § 1681s–2(a)).  Those portions of the complaints alleging violations of Section 1681s–2(a) are accordingly dismissed.

EverHome also seeks to dismiss as legally insufficient those portions of the complaints alleging violations of Section 1681s–2(b).  "Although a private citizen may bring an action under 15 U.S.C. § 1681s–2(b), this cause of action is not without limitations." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011).  A furnisher's duties under this subsection are only implicated "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." *Id*. (quoting 15 U.S.C. § 1681s–2(b)(1)).  Thus, "a private citizen wishing to bring an action against a furnisher must first file a dispute with the consumer reporting agency, which then must notify the furnisher of information that a dispute exists." *SimmsParris*, 652 F.3d at 359.  Once the furnisher receives notice of the dispute, it must undertake a reasonable investigation to verify the accuracy of the information. *See id*.  Accordingly, a furnisher may only be held liable under Section 1681s–2(b) when: (1) it is notified of a dispute by a CRA,

---

³ While subparagraphs 43(a)–(b) do not directly cite Section 1681s–2(a), the conduct described in those subparagraphs is prohibited by that section. *See* 15 U.S.C. Section 1681s–2(a)(1)(B) ("A person shall not furnish information relating to a consumer to any consumer reporting agency if . . . (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate.").

"thereby triggering the furnisher's duty to investigate"; and (2) it "fails to undertake a reasonable investigation following such notice." *Id*.

EverHome contends that the Cicalas fail to allege that it received notification of the dispute from the CRAs and then subsequently failed to conduct a reasonable investigation. (Def.'s Mot. to Dismiss ("Def.'s Mot.") at 6, ECF No. 28.) This argument mischaracterizes the Cicalas' allegations. *See Sheffer v. Experian Info. Sols., Inc.*, 249 F. Supp. 2d 560, 562 (E.D. Pa. 2003). The Cicalas notified both EverHome and the CRAs of the disputed information. (Compl. ¶¶ 23–24.) Thereafter the CRAs told the Cicalas that the "accounts had been 'verified.'" (*Id.* ¶ 25.) The Cicalas also allege that EverHome failed to conduct an investigation into the accuracy of the disputed information. (*Id.* ¶ 43(h).) Accordingly, the only allegation arguably absent from the complaints is that the CRAs notified EverHome of the dispute.

"Although § 1681s–2(b) seemingly 'requires a pleading that a consumer reporting agency notified a furnisher of a dispute,' this information would, at the pleading stage, be unknowable by the plaintiff." *Sullivan v. Equifax, Inc.*, No. 01-4336, 2002 WL 799856, at *2 n.3 (E.D. Pa. Apr. 19, 2002) (quoting *Jaramillo v. Experian Info. Sols., Inc.*, 155 F. Supp. 2d 356, 363 (E.D. Pa. 2001)). Recognizing this limitation, our Court has allowed similar claims to go forward on the understanding that a defendant may renew its motion to dismiss if discovery reveals that the furnisher was not, in fact, notified of the dispute. *See, e.g.*, *Id.* at *2 (allowing claim to go forward where plaintiff alleged that they notified both the CRA and furnisher of the dispute and that the furnisher failed to investigate); *see also Jaramillo*, 155 F. Supp. 2d at 363 (same); *Sheffer*, 249 F. Supp. 2d at 562 (same). The Cicalas' claims "include[] allegations that, at the very least, create the reasonable inference that [EverHome] failed to adequately respond to the

credit reporting agencies' investigatory inquiries." *Sheffer*, 249 F. Supp. 2d at 562.[4]

EverHome's motion to dismiss those parts of the complaints alleging violations of Section 1681s–2(b) is denied.

### IV.

The Cicalas also assert common law claims for defamation of character. EverHome contends that Section 1681t(b)(1)(F) of the FCRA preempts such claims. (Def.'s Mot. at 7–9.) Section 1681t(b)(1)(F) provides, in relevant part: "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." EverHome contends that "laws of any State" includes common law defamation claims. The Cicalas argue that 1681t(b)(1)(F) applies only to statutes, not common law rules. (Pls.' Resp. to Def.'s Mot. to Dismiss ("Pls.' Resp.") at *7–9.) Accordingly, the Cicalas contend Section 1681h(e) governs the issue of common law preemption. Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681[o] of this title, no consumer may bring any action or proceeding *in the nature of defamation, invasion of privacy, or negligence* with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer*.

---

[4] The FCRA mandates that a CRA, after receiving notice of a dispute from a consumer, promptly provide notification to the furnisher of the relevant credit information. *See* 15 U.S.C. § 1681i(a)(2). "Thus, in light of [the Cicalas'] allegations, it appears that [EverHome] would have been notified by the [CRAs] about the disputed information in [the Cicalas'] credit report unless those [CRAs] were acting in violation of the FCRA." *Sheffer*, 249 F. Supp. 2d at 562 n.3. In any event, "this issue is one appropriately resolved after discovery has been completed." *Id.* (citing *Sullivan*, 2002 WL 799856, at *2 n.3).

15 U.S.C. § 1681h(e) (emphasis added). Since the complaints allege that EverHome acted willfully and maliciously, the Cicalas contend that their defamation claims fall outside Section 1681h(e)'s preemptive reach.

The Third Circuit Court of Appeals has yet to analyze the relationship between Sections 1681t(b)(1)(F) and 1681h(e) as they relate to preemption. Courts within and outside this Circuit, however, have held that Section 1681t(b)(1)(F) preempts both statutory and common law claims. The most notable of these decisions is the Seventh Circuit Court of Appeals's holding in *Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011). *Purcell* noted that in 1996 when Congress created "[t]he extra federal remedy in § 1681s–2," it was "accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges." *Purcell*, 659 F.3d at 625. Section 1681h(e), on the other hand, was enacted in 1970. *See id*. In holding that plaintiff's defamation claim was preempted, *Purcell* reasoned that "[r]eading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s–2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation." *Id*.

*Purcell* also observed that the two preemption provisions are compatible. Specifically, the Court stated:

> [T]he first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more. There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting a speed limit of 55. It is easy to comply with both: don't drive more than 55 miles per hour . . . . This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F). When it drops out, § 1681h(e) remains.

*Id*. A number of Courts have since agreed that Section 1681t(b)(1)(F) preempts common law causes of action. *See, e.g.*, *Vullings*, 115 F. Supp. at 543 (finding defamation claim preempted);

8

*see also Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495, 500 (E.D. Pa. 2014) (noting the persuasive reasoning in *Purcell*); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011) (finding defamation and intentional infliction of emotional distress claims preempted); *contra Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 425 (E.D. Pa. 2006).[5] Section 1681t(b)(1)(F) preempts the Cicalas' defamation claims.

      An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[5] *Manno*, decided five years before *Purcell*, specifically observed that at the time, "no circuit court opinion [had] address[ed] this question." *Manno*, 439 F. Supp. 2d at 425 n.9 (citing *Beyer v. Firstar Bank N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) (noting that district courts have taken different approaches and declining to reach the question)). Since *Manno*, however, a number of Circuit Courts have addressed the issue and found that Section 1681t(b)(1)(F) preempts common law claims. *See, e.g.*, *Marshall v. Swift River Academy, LLC*, 327 F. App'x 13, 15 (9th Cir. 2009); *Pinson v. Equifax Credit Information Services, Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009); *Purcell*, 659 F.3d at 625; *Macpherson*, 665 F.3d at 48.